Wilmer J. Patlow, J.
In the late afternoon of December 24, 1969, defendants, all members of a group called “ Concerned Youth of Area Youth Ministry and Rochester Power and Light ’ ’ proceeded to the downtown área of the City of Rochester for the avowed purpose of staging anti-Vietnam war skits in the presence of Christmas shopping crowds.
Some of the defendants were dressed in biblical costume and others were outfitted in a military manner. The skits themselves were of less than one minute duration, and were performed at various sidewalk locations in the vicinity of major department stores. Spectators watching these demonstrations never numbered more than 30 or 40 persons.
There were three separate groups of defendants, all of whom were arrested at virtually the same time at different and distinct downtown locations.
*578 The largest group, numbering six defendants, was charged with obstructing governmental administration (Penal Law, § 195.05), as well as disorderly conduct (§ 240.20, subds. 5 and 6). A second group of defendants, three in total, was charged with disorderly conduct ('§ 240.20, subds. 1 and 6). The final group, consisting of one defendant, was charged with disorderly conduct (§ 240.20, subds. 2 and 5).
By agreement, all of the defendants were tried together before this court.
At the conclusion of the People’s case, defense counsel moved for a dismissal of the obstructing governmental administration charge. The motion was granted by this court, inasmuch as the People had presented insufficient evidence to substantiate that charge. In addition, defense counsel moved for a dismissal of all disorderly conduct charges against all of the defendants on constitutional as well as other grounds.
The latter motion is the subject matter of this decision.
The evidence establishes the fact that at none of these incidents was there any violence or threat of violence on the part of either defendants or the onlooking crowds. No vehicular traffic was directly affected. However, there was testimony that at one of the skits, some pedestrians stepped into the street rather than pass through or among the defendants on the sidewalk, or wait for the skit to end.
The evidence also establishes the fact that those defendants who were asked to disperse by the police refused to do so.
The question that is squarely before this court is whether or not the arrest of these defendants for disorderly conduct violates their constitutional rights under the First and Fourteenth Amendments.
An analysis of the leading cases in this area indicates that there are certain significant tests that courts apply to the fact situations before them in arriving at an answer to the constitutional question.
The first and primary test is whether or not there is evidence of violence or threat of violence.
The Supreme Court of the United States has held where there was no violence or threat of violence on the part of the defendants or on the part of any member of the crowd watching them and there were no threatening remarks, hostile gestures or offensive language on the part of any member of the crowd, a conviction for breach of the peace could not withstand constitutional attack (Edwards v. South Carolina, 372 U. S. 229).
*579 On the other hand, the Supreme Court has also held 11 when clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious ” (Cantwell v. Connecticut, 310 U. S. 296, 308).
A secondary test is that of interference with vehicular and/or pedestrian traffic. The New York State Court of Appeals has held that more than a mere inconveniencing of pedestrians was required to support a conviction under section 722 of the former Penal Law, (predecessor of the disorderly conduct section now under consideration). There being no showing that the defendants caused any serious annoyance or that their manner was threatening or abusive was enough to overturn a lower court’s conviction. (See People v. Carcel, 3 N Y 2d 327.) The court also cited with approval People v. Nixson (248 N. Y. 182) where again a conviction under section 722 of the old Penal Law could not he upheld, even though the obstruction was such that people were actually forced into the roadway to pass the defendants.
Nevertheless, the courts of this State have not hesitated to sustain convictions where defendants have laid down on the street to block trucks, or jumped police barricades to stop vehicular traffic. (See People v. Galamison, 43 Misc 2d 72 and People v. Penn, 48 Misc 2d 634.)
Based upon these two judicial tests, this court finds that the defendants herein were properly exercising their rights under the First Amendment of the United States Constitution.
The fact that their cause may have been popular or unpopular is immaterial. ‘ ‘ The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views ” (Edwards v. South Carolina, supra, p. 237).
Nor is the fact that the defendants refused to comply with the police orders to disperse fatal to their position. A similar refusal occurred in the Edwards case, but since the court ruled there that the defendants were engaging in the lawful expression of their constitutional rights, they could not be deprived of such rights because of this refusal.
In both the recent case of People v. Todaro (26 N Y 2d 325) and in the landmark case of People v. Galpern (259 N. Y. 279) the Court of Appeals upheld disorderly conduct convictions based upon defendant’s refusal to obey a police officer’s order to disperse. However, in neither of these cases was there a prior finding that the defendant was engaged in the valid exercise of a constitutional right.
*580 There is such a finding in the case at bar.
Clearly, “ One cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution ” (Wright v. Georgia, 373 U. S. 284, 291-292).
Perhaps, the case that is both most recent and relevant is that of People v. Cagan (60 Misc 2d 1037).
In reversing a disorderly conduct conviction, the court briefly reviewed the importance and significance of the First Amendment, reminding us that in the words of Justice Cardozo, it is the ‘ ‘ matrix, the indispensable condition, of nearly every other form of freedom” (Palko v. Connecticut, 302 U. S. 319, 327). The court then went on to state (p. 1039) that “judged in the context of his fundamental rights,” the complaint against the defendant must be dismissed.
This court finds that judged in the context of their fundamental rights, these defendants are entitled to similar treatment.
Therefore, the motion of defense counsel is granted and the informations are dismissed.